DARRYL D. GOODWIN,

     Plaintiff,

vs.                                CASE NO. 3:10-cv-604-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

_____/

## ORDER AND OPINION

This matter is before the Court on Plaintiff's Complaint (Doc. #1), which seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff filed his Memorandum in Support of the Appeal of the Commissioner's Decision (Doc. #11), and Defendant filed his Memorandum in Support of the Commissioner's Decision (Doc. #12). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated September 17, 2010 (Doc. #8). The Commissioner has filed the transcript of the underlying administrative record and proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed the record and has given it due consideration in its entirety, including arguments presented by the parties in their briefs and materials provided in the transcript of the underlying proceedings. For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

# I. Procedural History

Plaintiff filed a claim for DIB and SSI benefits on July 26, 2007, alleging disability as of December 1, 2006 (Tr. 106-13).  Plaintiff's claim was denied through two administrative review stages (Tr. 43-61).  On September 9, 2009, a hearing was held before Administrative Law Judge Charles R. Howard ("the ALJ") (Tr. 26-42).  At the hearing, Plaintiff appeared and testified, as did vocational expert Robert Bradley ("the VE") (Tr. 26-42).  Following the hearing, the ALJ found that Plaintiff was not disabled by a hearing decision dated September 16, 2009 (Tr. 11-23).  The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (Tr. 1-4).  Subsequently, after exhausting his administrative remedies, Plaintiff filed the instant appeal (Doc. #1).

# II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456, n.1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20

C.F.R. §§ 404.1520(a)(4)(i-v); 416.920(a)(4)(i-v)[1]; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

---

[1] Unless otherwise specified, all references to 20 C.F.R. will be to the 2010 edition. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. that pertain to part 404 and disability insurance benefits.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations. 20 C.F.R. § 404.1512(c).

### III. Background Facts

Plaintiff was born on January 24, 1967; thus, at the time of the 2009 hearing, he was forty-two years old (*see* Tr. 29). Plaintiff graduated high school and has past relevant work experience as an automobile mechanic and construction worker (Tr. 29, 39). *See* UNITED STATES DEP'T OF LABOR, *Dictionary of Occupational Titles* §§ 620.261-101, 869.664-014

4

(4th Ed. 1991).  Plaintiff ceased working on December 1, 2006, alleging disability due to enlarged heart, liver and kidney problems, and pain in his back, shoulders, elbows, hands, fingers, legs, knees, and ankles (Tr. 130, 167).  Additionally, at the hearing, Plaintiff alleged disability due to "a heart condition and a thyroid problem," which caused liver and kidney dysfunction, fibromyalgia, carpal tunnel syndrome, and depression (Tr. 32).

The ALJ found Plaintiff had the following severe impairments: degenerative disc disease, carpal tunnel syndrome, and depression (Tr. 15).  After considering the evidence of record and the testimony obtained at the hearing, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work (Tr. 18).[2]  The ALJ excepted work requiring repetitive pushing and pulling with the upper extremities and concentrated exposure to extreme heat, cold, vibrations, and other hazards (Tr. 18).  The ALJ also limited Plaintiff to performing "simple, repetitive non-detailed tasks where co-worker and public contact is casual and infrequent, where supervision is direct and non-confrontational, and where changes in the workplace are infrequent and gradually introduced" (Tr. 18).[3]

When considering Plaintiff's impairments at step three of the sequential evaluation process, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404 Subpt. P. (Tr. 16-18).  At step four, the ALJ found Plaintiff unable to perform any past

---

[2] Light work requires the ability to lift and carry twenty pounds occasionally and up to ten pounds frequently, sitting up to six hours of an eight-hour workday, and standing/walking six or more hours in an eight-hour workday.  20 C.F.R.§§ 404.1567(b) and 416.967(b); *see also* SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Nov. 30, 1982).

[3] In the hypothetical question posed to the VE, the ALJ provided these same limitations (Tr. 40).

relevant work (Tr. 21); however, after accepting the VE's testimony, the ALJ found (at step five) that Plaintiff was capable of performing other occupations in the regional and national economy, such as an assembler, stock room checker, and photograph finisher (Tr. 22). *See Dictionary of Occupational Titles, supra*, §§ 706.687-010, 222.687-010, 976.487-010.

In the Disability Report-Adult, dated July 26, 2007, Plaintiff claimed he was unable to work due to, *inter alia*, shortness of breath, muscle cramps, and back pain (Tr. 130). In the Disability Report-Appeal, dated May 19, 2008, Plaintiff claimed to have experienced changes in his condition since the prior report, *supra* (Tr. 167). Specifically, Plaintiff noted a decrease in his level of fatigue due to medication but an increase in pain in his shoulders, elbows, fingers, and knees (Tr. 167). Plaintiff noted no changes of symptoms in the Disability Report-Appeal, dated September 19, 2008 (Tr. 193).

On October 3, 2007, Plaintiff underwent a consultative psychological examination by Peter Knox. M.Ed., Psy.D. ("Dr. Knox"), at the request of the Commissioner (Tr. 213-18). Upon clinical examination, Plaintiff's mood appeared slightly dysphoric and he had a matter-of-fact affect (Tr. 215). Dr. Knox diagnosed Adjustment Disorder with Depressed Mood and polysubstance abuse in remission, assigning Plaintiff a Global Assessment of Functioning ("GAF") score of 55 (Tr. 217).[4] At the time of the evaluation, Plaintiff informed Dr. Knox he had not used cocaine since January, 2007, and had used marijuana "back in

---

[4] The Global Assessment of Functioning scale ("GAF") was designed by mental health clinicians to rate the psychological, social, and occupational functioning of an individual on a mental health scale of 0-100. A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, [and] has some meaningful interpersonal relationships." A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

the day" (Tr. 215). Plaintiff also reported he had been incarcerated on three separate occasions for marijuana possession, cocaine possession, and receiving stolen property (Tr. 215). Later, on January 4, 2008, Plaintiff informed his treating physician at Shands Hopsital Jacksonville that he used marijuana occasionally (Tr. 231).

On December 4, 2007, Plaintiff was examined by state agency examining physician, Lynn Harper-Nimock, M.D. ("Dr. Harper-Nimock") (Tr. 220). Dr. Harper-Nimock diagnosed Plaintiff with, *inter alia*, degenerative disc disease, hypothyroidism, depression, and kidney impairment, noting a decrease in range of motion of his lower back and hips (Tr. 222). Dr. Harper-Nimock found Plaintiff to have "moderate" limitations for prolonged sitting, standing, walking climbing, or heavy lifting with a prognosis of "fair" (Tr. 223).

On March 20, 2008, non-examining physician, Eric Puestow, M.D. ("Dr. Puestow"), performed a Physical Residual Functional Capacity Assessment (Tr. 285-92). After reviewing Plaintiff's medical records, Dr. Puestow found Plaintiff had the ability to stand and/or walk for at least six (6) hours in an eight-hour workday, and sit for about six (6) hours in an eight-hour workday (Tr. 286). Additionally, Dr. Puestow found Plaintiff capable of lifting and/or carrying up to fifty (50) pounds occasionally and twenty-five (25) pounds frequently (Tr. 286).

Also on March 20, 2008, Steven Wise, Psy.D. ("Dr. Wise"), completed a Psychiatric Review Technique (Tr. 271-84). In the evaluation, Dr. Wise reported Plaintiff had impairment(s) which were not severe (Tr. 271). Dr. Wise further stated Plaintiff's degree of limitation was only mild with no episodes of decompensation of extended duration (Tr. 281). Dr. Wise concurred with Dr. Knox's diagnosis of Adjustment Disorder with Depressed Mood and polysubstance abuse in remission (Tr. 283).

7

On June 16, 2008, Plaintiff underwent another psychological evaluation with Michael Zelenka, Ph.D. ("Dr. Zelenka") (Tr. 293-306). Dr. Zelenka came to the same conclusions as Dr. Wise, finding Plaintiff's limitations mild and his impairment(s) not severe (Tr. 293, 303). Dr. Zelenka similarly concurred with Plaintiff's diagnosis of Adjustment Disorder with Depression and polysubstance abuse in remission (Tr. 305).

On July 1, 2008, Kenneth Hentschel, D.O. ("Dr. Hentschel"), conducted a neuromuscular/electrodiagnostic evaluation of Plaintiff's hand pain and paresthesias at Shands Jacksonville (Tr. 313-17). Neurological testing revealed diminished temperature appreciation in a glove-like pattern bilaterally (Tr. 314). Pin testing revealed diminished glove-like pattern on the left and right hands with deficits most at right-hand digits 1 and 2 (Tr. 314). The nerve conduction study revealed bilateral hand paresthesias with features of median nerve entrapments at the wrists, mild to moderate on the left and mild on the right (Tr. 315). Dr. Hentschel advised Plaintiff to utilize anti-inflammatory medications, activity modification, and a nightly wrist splint (Tr. 315).

On August 7, 2008, Plaintiff underwent a second consultative physical examination with Dr. Harper-Nimock (Tr. 322-27). The examination revealed decreased flexion, extension, and rotary movement of the cervical and lumbar spine (Tr. 323). Plaintiff also had decreased range of motion in his shoulders, elbows, forearms, and wrists (Tr. 323). At that time, Plaintiff informed Dr. Harper-Nimock he was capable fo cooking, cleaning, doing laundry, showering, and dressing himself (Tr. 322). Dr. Harper-Nimock diagnosed degenerative disc disease with radiculopathy, bilateral carpal tunnel syndrome, degenerative joint disease, hypothyroidism, anemia, decreased smell, nicotine dependency, and recurrent tendonitis of the elbows, knees, and ankles (Tr. 323). Plaintiff's

prognosis remained fair with moderate limitations for prolonged sitting, standing, walking, climbing, and heavy lifting (Tr. 324).

On August 28, 2008, non-examining physician Nicolas Bancks, M.D. ("Dr. Bancks"), performed another Physical Residual Functional Capacity Assessment (Tr. 328-35). After reviewing Plaintiff's medical records, Dr. Bancks similarly found Plaintiff to be capable of standing and/or walking for at least six (6) hours in an eight-hour workday, and that Plaintiff could sit for about six (6) hours in an eight-hour workday (Tr. 329). Additionally, Dr. Bancks found Plaintiff capable of lifting and/or carrying up to twenty (20) pounds occasionally and ten (10) pounds frequently (Tr. 286).

On November 7, 2008, Plaintiff was treated by K.E. Nixon, M.D. ("Dr. Nixon"), for complaints of pain in the back, elbow, and hands (Tr. 353). Physical examination revealed limited range of motion of the shoulders and left epicondyle as well as paraspinal muscle sprain. Diagnoses were for hypothyroidism, back and neck pain, carpal tunnel syndrome, and possible Morton's Neuroma (Tr. 354).[5]

---

[5] Morton's neuroma involves a thickening of the tissue around one of the nerves leading to the toes. In some cases, Morton's neuroma causes a sharp, burning pain in the ball of the foot. THE MAYO CLINIC, http://www.mayoclinic.com/health/mortons-neuroma/DS00468 (last visited Aug. 18, 2011). It should be noted that the judiciary does not exercise responsibility over the content or current viability of the URL provided.

On March 1, 2009, Plaintiff informed Dr. Nixon that he was unable to sleep and requested a change from Ativan to Elavil (Tr. 348).[6]  Plaintiff also requested pain medication due to an increased pain level (Tr. 348).  Physical examination was again positive for limited range of motion in the upper extremities (Tr. 348).  The diagnoses were chronic shoulder pain, insomnia, and fibromyalgia (Tr. 349).

On May 1, 2009, Plaintiff presented to Dr. Nixon's office with complaints of nasal congestion, lower back and hand pain, weakness in his knees, kidney pain, and numbness in the right hand (Tr. 346).  At the July 6, 2009, follow-up appointment, Dr. Nixon reviewed recent lab tests that were again positive for hypothyroidism and hyperlipidemia (Tr. 345).  At this appointment, Plaintiff again complained of chronic pain in his back and upper extremities (Tr. 345-45).

Dr. Nixon wrote a letter, dated November 4, 2009, indicating he was Plaintiff's treating physician since October 20, 2008 (Tr. 358).  Dr. Nixon stated Plaintiff suffers from significant chronic health conditions that impair his activities of daily living (Tr. 358).  Such impairments included: hypothyroidism, hyperlipidemia, arthralgias, carpal tunnel syndrome, and fibromyalgia (Tr. 358).

At the September 9, 2009 hearing, Plaintiff testified he worked as a construction worker since 1998 and had been an automobile mechanic prior to working in the

---

[6] Ativan (lorazepam), an anti-anxiety agent. RxLIST, http://www.rxlist.com/ativan-drug.htm (last visited Aug. 18, 2011). Elavil (Amitriptyline) is an antidepressant medication. RxList, http://www.rxlist.com/script/main/art.asp?articlekey=23397 (last visited Aug. 18, 2011).

construction industry (Tr. 30-31). Plaintiff stated he "hurts all over" (Tr. 32), most notably in his lower back (Tr. 33). Plaintiff contends the pain prevents him from sitting, standing, lying down, or driving for more than thirty (30) minutes at a time (Tr. 32). Shortly thereafter, Plaintiff testified that he is only capable of standing or walking for about fifteen (15) minutes at a time and that he can only sit for twenty (20) minutes at a time in an eight-hour day (Tr. 35). Plaintiff testified he is not capable of performing various household tasks, such as laundry, washing dishes, or yard work, and that his girlfriend generally takes care of the house and a friend mows his lawn (Tr. 36). Plaintiff testified he has not used any illegal substances since 1996 and has only been incarcerated once (Tr. 37).

Following Plaintiff's testimony, the ALJ asked the VE what types of jobs Plaintiff could perform if he were limited to light work with limitations, including: (1) no repetitive pushing or pulling with the upper extremities; (2) no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling; (3) no concentrated exposure to temperature extremes, vibration, or hazards; and (4) performing simple, repetitive, non-detailed tasks where coworker and public contact is casual and infrequent, supervision is direct and non-confrontational, and changes in the workplace are infrequent and gradually introduced (Tr. 39-40). Using said limitations, the VE testified that, due to the stress involved, Plaintiff could not perform his past relevant work but that he could perform other light duty unskilled jobs, including assembler, stock room checker, and photograph finisher (Tr. 40). *See Dictionary of Occupational Titles*, *supra*, §§ 706.687-010, 222-687-010, 976.487-010.

Based on the record evidence and the testimony obtained at the hearing, the ALJ found Plaintiff was not disabled under the Act (Tr. 23).

# IV. Analysis

## A. The ALJ's Credibility Finding

Plaintiff argues the ALJ improperly evaluated his credibility regarding his testimony as to the intensity, persistence, and limiting effects of his symptoms (Doc. #11 at 1). For the reasons stated herein, the undersigned is not persuaded.

An ALJ must consider all of a plaintiff's statements about his or her symptoms, including pain, and determine the extent such symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1520. In so doing, the ALJ must apply the Eleventh Circuit's three-part pain standard, which requires: (1) evidence of an underlying medical condition; and either (2) objective medical evidence substantiating the severity of the pain asserted; or (3) the objective medical condition is so severe that it can be reasonably expected to give rise to the pain asserted. *Foote*, 67 F.3d at 1560.

Where an ALJ decides not to credit a plaintiff's testimony about an asserted condition, the ALJ must articulate specific and adequate reasons based on substantial evidence, or the record must be obvious as to the credibility finding. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). The Eleventh Circuit has noted that the ALJ has at his disposal many reasons for finding a claimant's testimony not credible, including daily activities. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (noting activities such as caring for personal needs, visiting a sick aunt, helping his spouse around the house, and carrying out the garbage supported the ALJ's finding that the claimant did not suffer disabling pain).

Plaintiff argues the ALJ simply offered a conclusory statement finding that Plaintiff's statements as to pain were not credible because they conflicted with the aforementioned

RFC.  Although the ALJ did not list specific reasons after his conclusion that Plaintiff's statements as to pain were not credible in one, two, three fashion, as ALJs sometimes do, he did describe several reasons in his opinion prior to making his conclusion.

The ALJ prefaced his analysis of Plaintiff's testimony and credibility by stating, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record" (Tr. 18).  The ALJ then discredited Plaintiff's testimony by noting, *inter alia*, his statements regarding his activities of daily living (Tr. 21) and inconsistencies between Plaintiff's testimony and evidence in the record (Tr. 20).[7] Specifically, the ALJ analyzed the following factors which bore on Plaintiff's credibility: medical tests including X-rays and MRIs did not support complaints of pain; nerve conduction studies did not provide evidence of clinically significant ulnar nerve entrapment in support of Plaintiff's claimed elbow pain; Plaintiff provided inconsistent statements as to

---

[7] For instance, although testifying to the contrary at the hearing, Plaintiff previously made statements to State Agency physicians that he did laundry, cooked, cleaned, showered, and dressed himself without aid (Tr. 20, 36).  Plaintiff also testified that he could drive for thirty (30) minutes at a time and later stated he was incapable of sitting, standing, or walking for longer than fifteen (15) or twenty (20) minutes (Tr. 32, 35).  Further, in Plaintiff's first Function Report–Adult, completed September 16, 2007, Plaintiff stated he only went shopping twice a month (with assistance) and could only walk fifty (50) feet (Tr. 154, 156).  However, Plaintiff later stated in the Function Report–Adult completed June 27, 2008, that he went shopping every other day with no mention of requiring help and that he could walk 100 feet (Tr. 180, 182).  Furthermore, the ALJ noted Plaintiff's testimony, as it relates to his activities of daily living, "was consistent with the residual functional capacity opined by the reviewing doctors to a significant degree" (Tr. 21).

alcohol and drug use[8]; Plaintiff's reported daily activities were consistent with the RFC provided; and Plaintiff's admission that his medication has been effective in treating his hypothroidism.[9] These factors were discussed prior to the ALJ's conclusion that Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not credible.

If an ALJ gives at least three reasons for discrediting a plaintiff's subjective complaints of pain, a court may find the ALJ properly discredited the subjective pain testimony. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989). Furthermore, the ALJ listed the process for determining whether Plaintiff's symptoms were consistent with the objective medical evidence, and cited to the regulation (20 C.F.R. 404.1529) concerning subjective pain testimony, which one court has found significant. *See Hennes v. Comm'r of Soc. Sec.*, 130 Fed. App'x. 343, 347 n.7 (11th Cir. 2005). Based on the foregoing, the undersigned finds the ALJ's conclusion that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the assessed residual functional capacity assessment is supported by substantial evidence (*see* Tr. 21).

---

[8] On October 3, 2007, Plaintiff informed Dr. Knox he had quit using cocaine in January, 2007, and used marijuana "back in the day" (Tr. 215). Later, on January 4, 2008, Plaintiff informed his treating physician at Shands Hospital he used marijuana "occasionally" (Tr. 231). Plaintiff testified at the hearing he had not used any illegal substances since 1996 (Tr. 37). The Court also notes Plaintiff testified at the hearing that he had only been arrested once for dealing in stolen property (Tr. 37). This statement is inconsistent with Plaintiff's admission to Dr. Knox he had been arrested on three occasions, including charges for marijuana in 1998 and cocaine in 1999 (Tr. 215).

[9] Medical conditions that are controlled with medication are not disabling. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (medical conditions that can reasonably be remedied by medication are not disabling). Laboratory and treatment records showed Plaintiff's thyroid to be within normal limits with good compliance with medication (Tr. 231, 233, 237, 242). Plaintiff reported to Dr. Harper-Nimock in August, 2008 that he had no current symptoms related to his thyroid problem, which had improved with medication (Tr. 321).

## B.    Side Effects of Medication

Plaintiff also argues the ALJ failed to consider the side effects of his medications (Doc. #11 at 15).  The undersigned finds this argument to be without merit because Plaintiff neither alleged nor established that the side effects of his medications were disabling.

The ALJ has a basic duty to develop a full and fair record; however, the claimant bears the burden of proving disability and is responsible for producing evidence in support if his or her claim.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  The Eleventh Circuit has clarified that, where a represented claimant's testimony raises a question as to the side effects of medications, but does not otherwise allege that the side effects contribute to the alleged disability, the ALJ does not err in failing to inquire further into possible side effects.  *Pilnick v. Commissioner of Social Security*, 2007 WL 3122168, at *1 (11th Cir. 2007) (*citing Cherry v. Heckler*, 760 F.2d 1186, 1191 n. 7 (11th Cir. 1985)).[10]

In *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990), the plaintiff argued the many medications she took had severe side effects that the ALJ failed to take into consideration.  The ALJ in that case noted that the plaintiff did not complain of side effects, with the exception that she felt one of her medications might be giving her headaches, and that the record did not disclose any concerns about side effects by the doctors who examined or treated her.  *Id.*  The Eleventh Circuit found that the ALJ's determination that side effects from the plaintiff's medication did not present a significant problem was supported by substantial evidence.  *Id.*  The same rationale applies to the facts of this case.

---

[10] Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

The ALJ was not obligated to find debilitating side effects of medication(s) where none were documented in the record.

Plaintiff did not satisfy his burden of establishing that the alleged side effects of his medications are disabling. For instance, at the hearing, Plaintiff provided very little testimony regarding his medications (Tr. 34). When specifically asked about the medications he was taking, Plaintiff testified only to past adverse side effects (Tr. 34).[11] The side effects Plaintiff mentioned related to medications he no longer takes, including a cholesterol pill that made him "sick" and an anti-depressant that gave him nightmares (Tr. 34). Furthermore, Plaintiff stated in both the Disability Report–Adult, completed July 26, 2007, and the Disability Report–Appeals, dated September 19, 2008, that he suffered no side effects from his medications (Tr. 133, 169).

In addition, the undersigned's independent review of the record does not reveal that any treating or examining physician(s) imposed limitations upon Plaintiff due to medication side effects. Moreover, although the ALJ did not discuss medication side effects in the body of his decision, it is implicit the ALJ considered Plaintiff's medications and the potential side effects by integrating a limitation on working around hazards into the first hypothetical the ALJ posed to the VE (Tr. 39-40). In considering said limitation with the others provided by the ALJ, the VE testified that a hypothetical claimant with such limitations would still be able to perform work in the national economy–including an assembler, stock room checker, and photograph finisher (Tr. 40).

---

[11] In addition, the undersigned's independent review of the record reveals that Plaintiff's treatment notes are largely silent with regard to medication side effects. On March 1, 2009, however, Plaintiff did request a change from Elavil for Ativan due to adverse side effects, which the doctor did (Tr. 348).

Based on the foregoing, the undersigned finds the ALJ's failure to address the alleged side effects of Plaintiff's medications in the body of his decision does not constitute reversible error.

## C.    RFC Finding

The RFC is an assessment based on all relevant evidence of a plaintiff's remaining ability to do work despite his or her impairments.  20 C.F.R. § 404.1545; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on the physicians' evaluations of a plaintiff's condition and the medical consequences thereof.  *Id.*  In evaluating a plaintiff's RFC, the ALJ must consider all of a plaintiff's impairments, including subjective symptoms such as pain.  20 C.F.R. § 404.1529.

In determining a plaintiff's RFC, the opinion, diagnosis, and medical evidence of a treating physician are entitled to more weight than the opinion of a non-examining source. 20 C.F.R. § 404.1527(d)(2).  The Regulations further instruct ALJs with respect to properly weighing the medical opinions of treating physicians.  The Regulations provide, in pertinent part, as follows:

> Generally, we give more weight to opinions from [a plaintiff's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s)," a treating physician's medical opinion is due to be afforded great weight so long as it is well

17

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Important to the determination of whether there is a "detailed, longitudinal picture" of a claimant's impairments is the length of the treatment relationship,[12] the frequency of examination, the knowledge of the treating source as shown by the nature and extent of the treatment relationship, the evidence and explanation presented by the treating source to support his or her opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician. 20 C.F.R. § 404.1527(d)(2)-(5).

Additionally, it is well established in the Eleventh Circuit that, generally, substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is "good cause" to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583. The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion: (1) is not bolstered by the evidence; (2) is contrary to the evidence; or (3) is inconsistent with the treating physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, a reviewing court cannot "disturb the ALJ's

---

[12] Generally, the longer a treating source has treated a claimant and the more times a claimant has been seen by a treating source, the more weight that should be given to that source's medical opinion. 20 C.F.R. § 404.1527(d)(2)(i).

18

refusal to give the opinion controlling weight." *Carson v. Comm'r of Soc. Sec.*, 300 Fed. Appx. 741 at *743 (11th Cir. 2008).

The ALJ stated the reasons for not giving great weight to the opinion(s) of Plaintiff's treating physician, Dr. Almojera, are: (1) Dr. Almojera's opinion(s) are inconsistent with other substantial medical evidence of record; (2) the opinion(s) are conclusory and inconsistent with the treatment notes; and (3) the opinion(s) are not well supported by medically acceptable clinical findings and laboratory diagnostic techniques (Tr. 19). There are only two notes in the record from Dr. Almojera (Tr. 336-37). The first, dated December 8, 2006, is an evaluation of Plaintiff's symptoms and an order for tests to be performed (Tr. 336). The second is a Medical Verification Form, dated August 15, 2007, in which Dr. Almojera asserts Plaintiff is unable to do "any activity" due to renal deficiency, liver disease, dyslipidemia, and anemia (Tr. 337). The attached laboratory reports are neither discussed nor evaluated by Dr. Almojera (*see* Tr. 336-41). Without any treatment notes or objective medical evidence, the undersigned finds the ALJ properly discredited Dr. Almojera's opinions regarding Plaintiff's inability to engage in any activity.[13]

Here, the ALJ's RFC determination is primarily based on consultive examinations by Dr. Harper-Nimock (Tr. 219-26, 320-27), Plaintiff's own admissions in both the record and at the hearing, and the opinions of two non-examining physicians, Dr. Puestow (Tr. 285-92) and Dr. Bancks (Tr. 328-35).

The ALJ also stated that he appropriately gave the opinion evidence of Drs. Knox and Harper-Nimock "some weight," to the extent consistent with the other evidence (Tr. 20).

---

[13] The undersigned would note that it appears Plaintiff was seen by Dr. Alomojera on only one occasion, December 8, 2006 (*see* Tr. 336-41).

After considering the expert opinion evidence of Drs. Puestow and Bancks in accordance with SSR 96-6p, the ALJ afforded the opinions "significant weight" (Tr. 20-21). An ALJ must state with particularity the weight given to the opinion of medical opinion evidence. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (finding the ALJ is "required to state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor").

Here, the ALJ stated three (3) reasons for the weight given to the reviewing doctors, including: (1) they are disability experts who had the bulk of the evidence from the treating sources and consultative examiners; (2) though they did not have the benefit of Plaintiff's hearing testimony, that testimony specifically as it relates to claimant's activities of daily living was consistent with the RFC found by the reviewing doctors to a significant degree; and (3) the evidence in total supports the conclusions of the State Agency doctors (Tr. 21).

In sum, the ALJ found Plaintiff not credible because the RFC assessment was supported by: (1) the objective medical evidence; (2) the State Agency physicians' opinions; and (3) Plaintiff's own testimony (Tr. 21). As such, the ALJ found Plaintiff not disabled and denied the claim for DBI and SSI (Tr. 23).

The Court would additionally note that it finds the ALJ properly considered, and took into account, Plaintiff's depression when making the RFC determination (Tr. 20). During a consultive examination by Dr. Knox, Plaintiff stated he had never had any mental health treatment aside from his physician prescribing an anti-depressant after Plaintiff complained he was depressed (Tr. 215). Dr. Knox diagnosed Plaintiff with Adjustment Disorder with Depressed Mood (Tr. 217). The ALJ specifically noted Dr. Knox's findings that Plaintiff's quality of thinking, concentration, orientation, and memory were normal and Plaintiff had

no behavior indications of anxiety, major depression, or thought disorder (Tr. 20). Additionally, the two psychiatric reviews, conducted by Drs. Wise and Zelenka, recognized Plaintiff's Adjustment Disorder but found it to cause only mild limitations (Tr. 281, 303). Finally, Plaintiff testified at the hearing he did not require mental health counseling (Tr. 34-35). As such, the ALJ's RFC ruling included limitations requiring co-worker and public contact to be casual and infrequent, supervision to be direct and non-confrontational, and changes in the workplace to be infrequent and gradually introduced (Tr. 18).

## V. Conclusion

Based on the foregoing, the undersigned finds the reasons cited by the ALJ for discrediting Plaintiff's subjective complaints of pain are supported by substantial evidence of record. The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## VI. Directions as to Judgment

The Clerk of Court is directed to enter judgment consistent with this Opinion and to, thereafter, close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 28th day of September, 2011.

Copies to all counsel of record
Pro se parties, if any

_Thomas E. Morris_
**THOMAS E. MORRIS**
United States Magistrate Judge